itself has initiated the review under 20 C.F.R. § 404.969.

 In light of these deficiencies in the Secretary's decision, this court concludes that the decision is not supported by substantial evidence. Under 42 U.S.C. § 405(g), this conclusion could result in the court "reversing the decision of the Secretary, with or without remanding the cause for a rehearing." *E.g., Breeden v. Weinberger*, 493 F.2d 1002, 1011–12 (4th Cir. 1974). Reversal, as opposed to remand, is appropriate "when 'the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when re-opening the record for more evidence would serve no purpose.'" *Young v. Harris*, 507 F.Supp. 907, 912 (D.S.C.1981), *quoting Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). As stated in *Bryant v. Harris*, 494 F.Supp. 932, 933 (D.S.C.1980):

> Reversal of the Secretary's decision is appropriate where the plaintiff's entitlement is clear from the record and where a remand would simply delay receipt of deserved benefits. *See Grable v. Secretary of HEW*, 442 F.Supp. 465 (W.D.N.Y. 1977). Where a record is lacking substantial evidence to deny benefits, but contains substantial evidence to grant them, reversal of the Secretary's decision is appropriate. *See Coleman v. Weinberger*, 538 F.2d 1045 (4th Cir. 1976).

*Accord: Lee v. Harris*, 492 F.Supp. 490 (D.S.C.1980). In light of the long delay since plaintiff's initial disability, the extensive body of medical evidence already in the record, the absence of any suggestion that additional medical evidence is available or necessary, and the claimant's clear entitlement to the disability benefits, this court feels that the Secretary's decision should be reversed. "[T]he Secretary has not shown sufficient good cause to prolong the litigation." *Taylor v. Weinberger*, 512 F.2d 664, 669 (4th Cir. 1975).

For the foregoing reasons, the Secretary's decision in this case is hereby reversed. This court finds that plaintiff is entitled to a period of disability commencing on May 13, 1973, and to disability insurance benefits under the Social Security Act.

AND IT IS SO ORDERED.

---

Thomas J. STRAMA, Plaintiff,

v.

Paul Q. PETERSON, M.D., et al., Defendants.

No. 78 C 2144.

United States District Court, N. D. Illinois, E. D.

April 12, 1982.

See also, D.C. 541 F.Supp. 75.

Stephen Seliger, Chicago, Ill., for plaintiff.

Joseph M. Gagliardo, Asst. Corp. Council, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's January 6, 1982 memorandum opinion and order (the "Opinion") determined that defendant Richard Albrecht ("Albrecht") was required to pay $45,551.36 in fees and expenses to plaintiff Thomas Strama ("Strama") as the prevailing party for purposes of 42 U.S.C. § 1988 ("Section 1988"). Judgment in accordance with the Opinion was entered January 11, and on February 8 Albrecht filed a notice of appeal.

Strama then moved to enforce the judgment—at least to the extent he claimed it was not contested—and Albrecht filed an application for stay pending appeal and an opposition to Strama's motion. Because Strama's trial against the other defendants was imminent and Albrecht had plainly misunderstood the aspect of the Opinion that had commented on the posture of the other defendants, this Court has briefly deferred its ruling on the cross-motions until the trial was over.

At this point the trial has been completed, with Strama obtaining a judgment against defendants Paul Peterson ("Dr. Peterson") and Karin Swanson ("Swanson") on his Section 1983 claim and against defendant Frank Baker ("Dr. Baker") only on his pendent state law claim. Accordingly Strama is entitled to seek Section 1988 attorneys' fees and expenses as part of the costs against Dr. Peterson and Swanson.[1] As the Opinion indicated and this opinion will confirm, those subsequent events are not really relevant to the current motions.

Strama's motion for relief poses possible jurisdictional problems (given the pendency of the appeal) if it is viewed as seeking a modification of the judgment. Albrecht also states (Mem. 3, emphasis in original):

[T]he City defendant intends to challenge the district court's ruling which granted an attorney's fee award against the City defendant on the district court's assumption that the City, on a theory of *right of contribution*, could recover from the other three co-defendants, if they were subsequently found liable, for that portion of the $45,551.56 in attorney's fees that the plaintiff's attorney had assessed against the state and private co-defendants in his preparation of the civil rights suit prior to the settlement date arrived at with the City defendant.[2]

Despite the poverty of that argument, this Court does not believe the case falls within *Parker v. Lewis,* 670 F.2d 249 (D.C.Cir. 1982), on which Strama relies—at least not for a district court to order *after* a notice of appeal has been filed. This Court does however note for consideration by the Court of Appeals, if the matter comes before it, that once the underbrush of Albrecht's mistaken "contribution" contention is cleared away, $30,131.57 of the fee award is not really challenged by Albrecht.[3]

Putting Strama's motion to the side, the Court is called upon to deal only with Albrecht's motion for a stay without superse-

---

1. After this opinion was written the Court was advised of the likelihood of a post-judgment settlement between Strama and Dr. Baker. It has accordingly revised this portion of the opinion, which originally dealt briefly with the question of Strama's possible right to fees against Dr. Baker.

2. As a reading of the Opinion (pp. 7–8) will demonstrate, that is really a totally mistaken view of what it says. Nothing in the Opinion assumed any right of recovery by Albrecht—on the contrary this Court held Albrecht liable whether or not he might later recover a part of the payment from other defendants. If more than one defendant were liable, the situation would simply be the common one of joint and several liability.

3. This is the amount of the fees without reference to the contested multiplier and without regard to expenses, which Albrecht says should not have been taxed against him alone.

deas bond. Fed.R.Civ.P. ("Rule") 62(d) provides for a stay as a matter of *right* if a supersedeas bond is given:

> *Stay Upon Appeal.* When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

But there is scant authority dealing with the *waiver* of a supersedeas bond while granting stay of a money judgment. Albrecht cites and relies solely on *Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n,* 636 F.2d 755, 760–61 (D.C. Cir.1980), where the Court concluded that district courts have discretion to issue unsecured stays and announced the following standard for exercise of that discretion:

> Because the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances, such as where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable. In unusual circumstances, however, the district court in its discretion may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery.

On that score Albrecht urges that the City of Chicago [4] is highly solvent so that no bond is appropriate. At the same time Albrecht takes the position that the Section

1988 attorneys' fees and expenses award is a judgment against the City, payable under Ill.Rev.Stat. ch. 24, § 8–1–16 only in the order in which judgments were obtained. Strama would then have to stand in line until all previously entered judgments were paid, a delay Strama says (without contradiction by Albrecht) would run about two years.[5]

Albrecht's position implicates several troublesome questions, including the general constitutionality of the judgment fund statute (presently under consideration by our Court of Appeals in *Evans v. City of Chicago,* Nos. 81–1150 and 81–1344) and the possible applicability of our Court of Appeals' opinion in *Balark v. Curtin,* 655 F.2d 798 (7th Cir. 1981) (unclear given Albrecht's death and the Rule 25 considerations already discussed at n.4). More importantly it calls into play Supremacy Clause considerations articulated in *Collins v. Thomas,* 649 F.2d 1203, 1206 (5th Cir. 1981):

> To the extent that § 1988's authorization of district court orders awarding attorney's fees conflicts with Texas' restrictions on the execution of judgments against counties, the federal statute must prevail over state law. U.S.Const. Art. VI, cl. 2. Fed.R.Civ.P. 69(a) specifies that state execution procedures are to be followed "except that any statute of the United States governs to the extent that it is applicable."

To avoid the difficult problems first identified in the preceding paragraph, this Court will instead apply its discretion under the criteria expressed in *Federal Prescription Service* (which it will be remembered is Albrecht's sole cited authority) in light of the principle announced in *Collins.* This is not a particularly "unusual circumstance"

---

**4.** Richard Albrecht died during the pendency of this action, and his death was suggested of record May 7, 1981. Strama did not however file a motion for substitution within the 90 day period specified in Rule 25(a)(1). Albrecht's counsel (in fact the City of Chicago Corporation Counsel) asserts that under those circumstances the judgment runs only against Albrecht's successor in his *official* capacity under Rule 25(d) and not against Albrecht's estate individually, and Strama has not contested that position.

**5.** Neither party has indicated, and this Court has not researched, whether in case of an affirmance the priority based on the "order in which the judgments were obtained" looks to the date of the original award or the date of affirmance.

that should call into play the *Federal Prescription Service* exception. Though the City will in all likelihood be good for the liability if upheld,[6] it does not stand ready "to satisfy the judgment in full upon ultimate disposition of the case"—at least not without substantial delay. Under the circumstances Strama should be afforded the same protection as the ordinary judgment creditor, to be assured immediate payment if his rights are vindicated on appeal.

For the foregoing reasons this Court will apply Rule 62(d) in its customary and literal manner. It denies Albrecht's motion for a stay without supersedeas bond. Albrecht is of course free to address the issue to the Court of Appeals under Fed.R.App.P. 8 (and see Rule 62(g)).

---

**6.** After the near escapes of New York City and Cleveland from bankruptcy, no prediction in this area is without some uncertainty. Time was when the prospect of failure by such giants as Penn Central, International Harvester and others would have been unthinkable as well.